STATE of Utah, Plaintiff and Respondent,

v.

Joseph MORITZSKY, Defendant and Appellant.

No. 880395–CA.

Court of Appeals of Utah.

March 23, 1989.

Kirk C. Bennett, West Valley City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., for plaintiff and respondent.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Joseph Moritzsky appeals his jury conviction of aggravated assault, a third degree felony in violation of Utah Code Ann. § 76-5-103 (1978). Defendant urges, through new counsel, reversal of his conviction due to his trial counsel's failure to request the appropriate "defense of habitation" jury instruction. Defendant claims counsel's failure rendered his assistance ineffective in contravention of the Sixth Amendment. We agree, and reverse defendant's conviction.

## FACTS

The relevant facts are gleaned mainly from the testimony of defendant and the victim of the charged assault, Gary Olson. Defendant and Olson were partners in a horse training venture, which they conducted in a "camp" outside of Vernal, Utah. Defendant moved a trailer he owned to the camp, in which he lived with his girlfriend and her small child. Olson continued to live in Vernal and commuted to the camp almost daily to work with the horses.

On April 1, 1987, Olson and two friends arrived at the camp at around 7:00 p.m., and defendant invited them into his trailer. Olson had been drinking beer since early that morning, and brought half a fifth of whiskey with him to the camp. Olson, defendant, and the others drank the whiskey, and after a short stay the two visitors

left the camp. Defendant and Olson then began to bicker over a horse they were training for a client. Olson wanted to take the horse to his home in Vernal; defendant wanted to keep the horse at the camp. Heated words were exchanged. Defendant testified that although Olson took off his hat and coat and threw them on the ground, indicating his intention to fight defendant, no physical violence occurred at this time. To avoid a fight, defendant told Olson to take the horse. Although the foregoing facts are essentially undisputed, the events following this confrontation are recalled quite differently by defendant and Olson.

Defendant claims the argument over the horse occurred outside the trailer. After deciding to allow Olson to take the horse, defendant went back into the trailer, drank a few beers, and had dinner. Believing Olson had mounted the horse and simply ridden off into the sunset, defendant went to bed. About an hour and a half after the argument, defendant was awakened by the sound of a person in the trailer. Defendant got out of bed, wrapped a towel around his otherwise naked self, and exited the bedroom to investigate the disturbance. Defendant found that a rope used to secure the trailer door had been broken, and Olson was standing in the front room. Defendant, believing Olson had returned intending to start a fight, tried to avoid further confrontation by offering Olson another beer. Olson responded by shoving defendant. Defendant told Olson not to shove him, and retrieved some wood for the fire. Olson shoved defendant again, harder than the first time. Defendant did not want to fight Olson in the small living room of the trailer while wearing only a towel. Accordingly, defendant went into his bedroom, retrieved his Colt .45 caliber pistol, came back into the front room, and fired a warning shot into the trailer ceiling. Olson quickly attempted to exit the trailer, and defendant helped him along with a shove out the door. Olson landed on the ground and got up cursing defendant, who then fired a second warning shot into the ground in front of Olson. Defendant told Olson to leave him alone or Olson would be

shot. Olson did not heed this warning, and defendant shot Olson in the foot when he stepped toward defendant, who was standing in the trailer doorway.

Olson recalls the evening's events somewhat differently. Olson claims the argument over the horse occurred inside the trailer, and during the argument defendant shoved Olson out of the trailer. Olson admits shoving defendant during the argument and eventually going back into the trailer, but claims he reentered only 20 minutes after being shoved out. Olson claims he went back into the trailer to retrieve a halter he needed to ride the horse home, and was shot while still inside the trailer.

In defense to the charge of aggravated assault, defendant raised self-defense, defense of property, and defense of habitation. The jury was instructed on each of these defenses. Having heard the conflicting testimony, the jury found defendant guilty of aggravated assault. Defendant seeks reversal of his conviction based on what he perceives as the ineffectiveness of his counsel. Defendant claims that given the above testimony, a properly instructed jury could conclude that defendant was defending his habitation when he shot Olson in the foot. However, the defense of habitation instruction requested by defendant's counsel and given to the jury failed to incorporate a statutory presumption that defendant acted reasonably, if the jury found he was otherwise entitled to assert the defense. *See* Utah Code Ann. § 76–2–405 (1988). Defendant claims that due to his counsel's failure to request the correct instruction, he was denied the right to effective assistance of counsel guarantied him under the Sixth Amendment to the United States Constitution.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's Sixth Amendment challenge to his conviction will be successful only if he can prove that (1) his counsel rendered an objectively deficient performance, demonstrated by specific acts or omissions; and (2) counsel's error prejudiced defendant, i.e., a "reasonable probability" exists that, but for counsel's acts or omissions, the verdict would have been more favorable to defendant. *See, e.g., State v. Verde*, 770 P.2d 116, 119 (1989); *State v. Frame*, 723 P.2d 401, 405 (Utah 1986); *State v. Geary*, 707 P.2d 645, 646 (Utah 1985); *State v. Pursifell*, 746 P.2d 270, 275 (Utah Ct.App.1987). On appeal, defendant must overcome the strong presumption that his counsel's assistance was adequate. *See Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The formidable nature of this burden is demonstrated by the fact that the parties have been unable to draw our attention to even a single reported Utah case where a criminal conviction was actually overturned on the basis of ineffective assistance of counsel.[1]

Nonetheless, the right to *effective* assistance of counsel is an important aspect of a criminal defendant's Sixth Amendment rights. Appellate courts must review each case carefully to prevent the infrequent meritorious claim from being reflexively swept into the tide of affirmance by the chronicles of probability. Our task is not to mechanically apply the two-part standard set forth above, but instead to "focus upon the fundamental fairness of the proceeding challenged. The purpose of the inquiry is simply to insure that defendant receives a fair trial." *Frame*, 723 P.2d at 405. It is with these observations in mind that we review the merits of defendant's claim. Because of its crucial role in this case, however, we first turn our attention to Utah's defense of habitation statute.

## DEFENSE OF HABITATION

Utah Code Ann. § 76–2–405 (1988) provides that defense of one's habitation may justify the use of force. The section provides as follows:

---

1. In a recent case, however, one member of this court favored reversal of a conviction on ineffective assistance of counsel grounds. *See State v. Morehouse*, 748 P.2d 217, 220–23 (Utah Ct. App.1988) (Jackson, J., dissenting).

(1) A person is justified in using force against another when and to the extent that he reasonably believes that the force is necessary to prevent or terminate the other's unlawful entry into or attack upon his habitation; however, he is justified in the use of force which is intended or likely to cause death or serious bodily injury only if:

(a) the entry is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth, and he reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person, dwelling, or being in the habitation and he reasonably believes that the force is necessary to prevent the assault or offer of personal violence; or

(b) he reasonably believes that the entry is made or attempted for the purpose of committing a felony in the habitation and that the force is necessary to prevent the commission of the felony.

(2) The person using force or deadly force in defense of habitation is presumed for the purpose of both civil and criminal cases to have acted reasonably and had a reasonable fear of imminent peril of death or serious bodily injury if the entry or attempted entry is unlawful and is made or attempted by use of force, or in a violent and tumultuous manner, or surreptitiously or by stealth, or for the purpose of committing a felony.

▮ The presumption provided in subsection (2) was added in 1985. *See* 1985 Utah Laws ch. 252, § 1. While not a model of clarity—subsection (1) speaks of reasonable beliefs and subsection (2) of reasonable action and reasonable fear—the thrust of subsection (2) is to vest persons who defend their habitation under circumstances described in subsection (1) with the presumption that their beliefs and actions were reasonable. *See In re R.J.Z.*, 736

P.2d 235, 236 (Utah 1987) ("legislature intended that a legal presumption of reasonableness would arise"). Where a defendant entitled to assert the defense establishes the factors articulated in subsection (2), the presumption is necessarily triggered and the burden shifts to the State to rebut it, i.e., to prove that in fact defendant's beliefs and actions under subsection (1) were not reasonable. *See id.* at 236–37 ("The first step in deciding whether any defendant is justified under section 76–2–405 is to determine what burden of proof the defendant and the State are respectively required to carry. It is impossible to allocate the burden of proof without first determining whether the defendant is entitled to the statutory presumption.").

In sum, before subsection (2) was added, a defendant had to show that he was defending his habitation and reasonably believed that the force he used was necessary to terminate an unlawful entry or attack. If deadly force were used, he also had to show a violent, tumultuous, surreptitious, or stealthy entry; reasonable belief that the entry was to do violence or commit a felony; and reasonable belief that the force used was necessary to prevent the violence or felony.[2] With the addition of subsection (2), a defendant need only show that he used force in defense of his habitation against unlawful entry or attempted entry and, in the case of deadly force, that the unlawful entry was violent, tumultuous, surreptitious, in stealth, or for the purpose of committing a felony. If the evidence establishing these facts is believed, defendant's pertinent actions and beliefs will be presumed reasonable and the State must rebut the presumption to invalidate the defense.

## COUNSEL'S PERFORMANCE

▮ Defendant's claim of ineffective assistance of counsel is specific in this case: Defendant's trial counsel requested and obtained a defense of habitation instruction in

---

**2.** To mount a successful affirmative defense of this sort, defendant's burden of proof is quite limited. He need not prove the defense beyond a reasonable doubt, by clear and convincing evidence, nor even by a mere preponderance. He need only create a reasonable doubt as to his guilt. *See generally State v. Knoll,* 712 P.2d 211, 213–215 (Utah 1985).

accordance with the inapplicable pre–1985 version of § 76–2–405, i.e., an instruction which left the jury—assuming it found the defense otherwise applicable—to *determine* reasonableness rather than requiring it to *presume* reasonableness.

The State, relying on two main arguments, would have us regard counsel's performance as not being objectively deficient. First, the State claims the evidence did not entitle defendant to any defense of habitation instruction, making it irrelevant what particular instruction was employed. *See State v. Speer,* 750 P.2d 186, 191 (Utah 1988) (counsel's performance was not deficient in failing to request a jury instruction to which defendant was not entitled). Second, the State contends counsel has broad discretion in making tactical decisions and accordingly we should not second-guess counsel's judgment. *See, e.g., Speer,* 750 P.2d at 191; *State v. Pursifell,* 746 P.2d 270, 275 (Utah Ct.App.1987). Neither argument is persuasive in this case.

Our review of the admittedly conflicting testimony convinces us that defendant is indeed entitled to raise the defense and have the jury instructed on the presumption. Defendant testified that he lives in the trailer with his girlfriend and her small child; thus, the shooting occurred at his habitation. Defendant also testified that Olson entered his habitation at night, without permission, and that Olson thereafter pushed defendant twice. This testimony, if believed, brings defendant within the scope of § 76–2–405 and triggers the presumption of reasonableness.

Nor can counsel's action be chalked up to trial tactics or the like. It appears to us that counsel merely overlooked the statutory presumption by failing to check the "pocket-part" of the Utah Code, where the 1985 amendment to § 76–2–405 is found. Obviously, there is no tactical explanation for requesting a defense of habitation instruction without inclusion of the beneficial presumption. Under these facts, this is simply not a matter entrusted to counsel's professional judgment. The lack of any conceivable tactical basis for this omission distinguishes this case from many of the previous cases where ineffective assistance of counsel claims were rejected. *See, e.g., State v. Frame,* 723 P.2d 401, 406 (Utah 1986); *State v. Pursifell,* 746 P.2d 270, 275 (Utah Ct.App.1987).

An appropriate defense of habitation instruction was necessary to insure that defendant received a fair trial under the standard articulated in *R.J.Z.* The jury should have been instructed to determine if Olson's entry was unlawful and forcible, violent, or otherwise qualifying for the presumption that defendant acted reasonably under § 76–2–405(2). By failing to request a defense of habitation instruction incorporating the presumption, counsel's performance was objectively deficient.

## PREJUDICE

We must next determine if counsel's deficient performance, as established above, undermines our confidence in the verdict against defendant. *See, e.g., Frame,* 723 P.2d at 405. Specifically, we must decide if a reasonable probability exists that the jury's verdict would have been more favorable to defendant had the proper instruction been given. *See Verde,* 771 P.2d at 118 n. 2, 124 n. 15. Since the availability of the presumption appears to be of considerable importance to defendant as outlined above, it is difficult for us to envision how counsel's failure to request the appropriate instruction would not be prejudicial. The State suggests two possibilities. First, the State renews its claim that defendant was not entitled to any defense of habitation instruction given the testimony at trial. The suggestion is curious since trial counsel and the trial court saw fit to instruct the jury on the defense of habitation doctrine, albeit without the applicable presumption. In any event, as analyzed in the preceding section in the context of counsel's performance, the evidence clearly warranted a defense of habitation instruction.

Second, the State claims that even if an instruction incorporating the presumption had been given, and the jury had also found that defendant was defending his habitation, defendant's own testimony conclusively rebuts the presumption in his fa-

vor. We cannot agree. Defendant testified he believed Olson wanted to fight him, and retrieved his gun to discourage Olson's aggression and encourage his departure. In fact, defendant fired two warning shots before firing the shot that struck Olson's foot. This shot was fired either while Olson was in the trailer or while he was standing outside but coming toward defendant and his habitation, depending on which story is believed. Defendant testified that Olson was shot only after ignoring defendant's warnings that he would be shot if he did not leave defendant alone. While defendant admitted that he probably told an investigating police officer that he was not afraid of Olson and thought he could "kick Olson's ass," a properly instructed jury might well regard this statement, in context, as the criminal law equivalent of "puffing" [3] and not conclusive evidence that defendant lacked a reasonable fear of imminent peril. Based on our review of the evidence, we find a reasonable probability that the jury's verdict would have been more favorable to defendant had the proper instruction been given. Accordingly, we cannot say with confidence that defendant received a fair trial, and his conviction must be reversed.

We hold that the Sixth Amendment requires defendant to be retried before a properly instructed jury. We accordingly reverse and remand for such proceedings.

BILLINGS and JACKSON, JJ., concur.

---

**3.** Generally, "puffing" is used in the commercial law context to describe "[a]n expression of opinion by seller not made as a representation of fact." Black's Law Dictionary 1109 (5th ed. 1979). The legal effect of such a statement was adeptly explained in 1923 by Justice Thurman: "For a dealer to say that the article he offers for sale 'will sell like hot cakes' may have a tendency to induce an ardent lover of hot cakes to make an improvident purchase, ... it affords [the buyer] no grounds of action or defense if the statement proves to be false." *Detroit Vapor Stove Co. v. J.C. Weeter Lumber Co.,* 61 Utah 503, 215 P. 995, 996 (1923). Defendant's statement, taken in context, might well be regarded by a jury as "macho" hyperbole rather than a definitive admission that defendant had no fear of Olson.