**2015 UT App 287**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ADAM KARR,
Appellant.

Opinion
No. 20130878-CA
Filed November 27, 2015

Third District Court, Salt Lake Department
The Honorable James T. Blanch
No. 121907482

Teresa L. Welch and John B. Plimpton, Attorneys
for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGE
STEPHEN L. ROTH concurred.[1] JUDGE J. FREDERIC VOROS JR.
concurred in the result, with opinion, in which JUDGE STEPHEN L.
ROTH concurred in part, with opinion.

DAVIS, Judge:

¶1      Adam Karr appeals from his convictions of murder and
obstruction of justice. We affirm.

---

1. Judge James Z. Davis participated in this case as a member of
the Utah Court of Appeals. He retired from the court on
November 16, 2015, before this decision issued.

BACKGROUND

¶2    Karr's convictions stem from a fight that occurred during a party at the home Karr shared with his brother (Brother).[2] The victim (Victim) arrived at the party as a guest of Karr and Brother's mutual friend. Victim became increasingly "obnoxious" and "belligerent" as the night wore on. Karr and Brother eventually asked Victim to leave, but Victim resisted. When Victim did leave, he returned minutes later to retrieve the liquor he brought to the party. While Victim waited for someone to bring him his liquor, he began making threats against Brother that Karr overheard. After Victim got his alcohol back, a fight broke out among Victim, Karr, and Brother during which Brother restrained Victim while Karr stabbed Victim seven times. Victim ultimately died from his injuries. Karr was charged with one count of murder and one count of obstructing justice.

¶3    Karr's defense at trial centered around his right to use force to defend his home pursuant to Utah Code section 76-2-405. The jury received instructions on Karr's defense of habitation theory and returned with guilty verdicts. Karr appeals.

ISSUE AND STANDARD OF REVIEW

¶4    Karr raises several arguments on appeal focusing on the accuracy of the defense of habitation jury instruction. "Claims of erroneous jury instructions present questions of law that we

---

2. "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." *State v. Dunn*, 850 P.2d 1201, 1205 (Utah 1993).

review for correctness." *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250.[3]

## ANALYSIS

¶5 Karr argues that the jury instructions undermined the presumption of reasonableness he was entitled to under the defense of habitation statute.[4] We reject Karr's argument but

---

3. We reject the State's claims that Karr has not adequately preserved his arguments for our review.

4. Karr also contends that the trial court erroneously "instructed the jury to determine whether the evidence triggered the presumption of reasonableness because the court was obligated to determine that issue itself." This is not what occurred; Instruction 36 affirmatively instructed the jury that the presumption applied. Karr alternatively argues that the trial court "erred when it failed to instruct the jury on the evidentiary threshold sufficient to trigger the presumption." However, because the court instructed the jury that the presumption applied, there was no need for the court to also instruct the jury on the evidentiary threshold necessary to trigger the presumption. Although we believe the trial court may have erred by instructing the jury that the presumption applied, *see State v. Patrick*, 2009 UT App 226, ¶ 19, 217 P.3d 1150 (explaining that "the statutory presumption of reasonableness" is "preclude[d]" by a finding that the victim's entry was lawful), the error benefited Karr and accordingly is not a prejudicial error warranting reversal, *see State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988) ("An error is prejudicial only if we conclude that absent the error, there is a reasonable likelihood of a more favorable outcome for the defendant."). Karr also discusses at length the characterization of the defense of habitation as an

(continued…)

recognize that the relevant jury instruction, Instruction 36, does contain errors. Those errors, however, are harmless. *See State v. Young*, 853 P.2d 327, 347 (Utah 1993) ("Even if [a] defendant can show that the instructions given by the trial court were in a technical sense incorrect, he has [to also] show[] that the instructions prejudiced him."). We address each issue in turn.

## I. Karr's Claims of Error Are Without Merit.

¶6      The defense of habitation statute provides,

> (1) A person is justified in using force against another when and to the extent that he reasonably believes that the force is necessary to prevent or terminate the other's unlawful entry into or attack upon his habitation; however, he is justified in the use of force which is intended or likely to cause death or serious bodily injury only if:
>
> > (a) the entry is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth, and he reasonably believes that the

---

(…continued)
evidentiary presumption versus an affirmative defense. Our case law settles any dispute as to the nature of the rights provided by the defense of habitation statute; it is an affirmative defense. *See, e.g.*, *Patrick*, 2009 UT App 226, ¶ 18 (referring to a defense of habitation argument as a "justification defense"); *Salt Lake City v. Hendricks*, 2002 UT App 47U, para. 2 (referring to the language in the defense of habitation statute as "appropriate for an affirmative defense"); *State v. Moritzsky*, 771 P.2d 688, 691 n.2 (Utah Ct. App. 1989) (identifying what a defendant relying on the defense of habitation statute must do "[t]o mount a successful affirmative defense of this sort").

entry is attempted or made for the purpose of assaulting or offering personal violence to any person, dwelling, or being in the habitation and he reasonably believes that the force is necessary to prevent the assault or offer of personal violence; or

(b) he reasonably believes that the entry is made or attempted for the purpose of committing a felony in the habitation and that the force is necessary to prevent the commission of the felony.

(2) The person using force or deadly force in defense of habitation is presumed for the purpose of both civil and criminal cases to have acted reasonably and had a reasonable fear of imminent peril of death or serious bodily injury if the entry or attempted entry is unlawful and is made or attempted by use of force, or in a violent and tumultuous manner, or surreptitiously or by stealth, or for the purpose of committing a felony.

Utah Code Ann. § 76-2-405 (LexisNexis 2012).

¶7    This court has explained that "[w]hile not a model of clarity"—subsection (1) of the statute "speaks of reasonable beliefs and subsection (2) of reasonable action and reasonable fear—the thrust of subsection (2) is to vest persons who defend their habitation under circumstances described in subsection (1) with the presumption that their beliefs and actions were reasonable." *State v. Moritzsky*, 771 P.2d 688, 691 (Utah Ct. App. 1989).

¶8    Two of the jury instructions provided at Karr's trial mirror the statutory language; Instruction 34 recites subsection (1) of the statute, and Instruction 35 recites subsection (2). Following those two instructions is Instruction 36, which reads,

However, even though the defendant is entitled to the presumption that his actions were reasonable,[5] the state may rebut that presumption by showing either that the entry was not made for the purposes of assaulting or offering personal violence to any person in the residence or for the purpose of committing a felony, or by showing that the defendant's actions were not reasonable or necessary. . . .

¶9     Karr argues that Instruction 36 "significantly undermined the presumption of reasonableness [he] was entitled to under" subsection (2) of the statute. According to Karr,

Instruction 36 told the jury to find [him] guilty if the prosecution proved any one of the following four facts: (1) [Victim's] entry was not made for the purpose of assaulting or offering personal violence to any person in the residence; or (2) [Victim's] entry was not made for the purpose of committing a felony; or (3) [Karr's] actions were not reasonable; or (4) [Karr's] actions were not necessary.

¶10     Karr acknowledges that the State is entitled to rebut the presumption of reasonableness contained in the statute but argues that the State must do so exclusively by showing that Karr's belief that he needed to use deadly force to prevent the entry was unreasonable. According to Karr, a showing that Victim's entry was lawful rebuts the availability of the defense

---

5. Instruction 37 adds, "In the context of defense of habitation, the facts and circumstances constituting reasonableness must be judged not from the actor's subjective viewpoint, but rather from the viewpoint of a person of ordinary care and prudence in the same or similar circumstances."

as a whole, not the presumption of reasonableness a defendant is entitled to once the unlawfulness of the entry is supported by the evidence. Karr's argument implies that once a fact like the unlawfulness of the entry is supported by the evidence, thereby "triggering" the availability of the defense and the presumption of reasonableness contained therein, that fact cannot be rebutted.

¶11 We disagree with Karr's interpretation of the defense of habitation statute. "When we interpret statutes, unless a statute is ambiguous, we look exclusively to a statute's plain language to ascertain the statute's meaning." *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 21, 56 P.3d 524. The defense of habitation statute indicates that the presumption is available if two conditions are met: (1) the victim's entry was unlawful and (2) the victim's entry was "made or attempted by use of force, or in a violent and tumultuous manner, or surreptitiously or by stealth, or for the purpose of committing a felony." *See* Utah Code Ann. § 76-2-405(2) (LexisNexis 2012); *Moritzsky*, 771 P.2d at 692. Thus, once the presumption applies, the State may defeat it by refuting the defendant's evidence that either of the two presumption-creating elements exist, i.e., by showing that the entry was (1) lawful or (2) not made with force, violence, stealth, or felonious purpose. *See* Utah Code Ann. § 76-2-405(2). Our case law also provides that once the presumption is triggered, the State may rebut it by proving "that in fact defendant's beliefs and actions under subsection (1) were not reasonable."[6] *Moritzsky*, 771 P.2d at 691; *see also* Utah Code Ann. § 76-2-405(1)(a)–(b) (describing the defendant's beliefs and actions under subsection (1) as pertaining to whether "the entry [was] attempted or made for the purpose of assaulting or offering personal violence to any person, dwelling, or being in

---

6. This refutes Karr's argument that the "beliefs" at issue in subsection (2) of the statute are not the same as those referenced in subsection (1).

the habitation"; whether "the entry [was] made or attempted for the purpose of committing a felony in the habitation"; and whether force was necessary to prevent the unlawful entry, assault, offer of violence, or commission of a felony). Thus, we reject Karr's argument that the only means by which the State could rebut the presumption was by showing that Karr's beliefs were not reasonable.

¶12    Moreover, the method the State used to rebut the presumption was to show that Karr's beliefs and actions were unreasonable—precisely the method Karr argues the State was required to use. The State focused on evidence indicating that Victim was neither inside the house nor attempting to reenter at the time of the stabbing and that Victim's intent in remaining by the entryway was to get his alcohol back. Indeed, Karr recognized in his opening brief that evidence showing that Victim's entry was, in fact, not "attempted or made for the purpose of assaulting" anyone in the home, *see* Utah Code Ann. § 76-2-405(1)(a), "might be relevant to deciding whether [his] belief was reasonable." (Emphasis omitted.) As the State asserted in closing argument, Karr's use of deadly defensive force "has to be only to the extent that is necessary to stop [Victim] from coming back in the house, . . . not just to get his alcohol, but from coming back in the house to fight, beat up, cause a felony, to do something." The State acknowledged that Victim may have acted inappropriately during the party but argued that Victim's "actions are not on trial" and that Victim's alleged threats of future harm do not provide a reasonable basis to use deadly force. The prosecutor stated, "You can't kill people because you think they're going to do something in the future. You can't kill people because of what they did [earlier], no matter how bad it was."

¶13    In closing argument, the prosecutor also pointed out that several eyewitnesses testified that the fight occurred outside the house and that any blood found inside the house could have

been tracked inside from other partygoers' feet; that various eyewitnesses testified about Victim's desire to get his alcohol before leaving; that Victim was unarmed; and that Victim did not throw the proverbial "first punch" or even try to fight back. Additionally, although it is undisputed that Victim was behaving "obnoxiously" and "belligerently," the record contained evidence that Brother had Victim restrained in a headlock on the front porch before and while Karr stabbed him repeatedly. In other words, because the evidence indicated that Victim was already outside the home and restrained prior to Karr's use of deadly force, it follows that Victim was neither attempting to reenter the home nor attempting to commit an assault in the home prior to Karr's use of deadly force, rendering unreasonable Karr's fear of imminent peril and his belief that deadly force was necessary.

## II. Instruction 36 Contains Harmless Errors.

¶14  Instruction 36 explains that the State can rebut the presumption by showing either (1) that Victim's entry or attempted entry was not made for purposes of assaulting or committing a felony or (2) that Karr's actions were unreasonable or unnecessary. Instruction 36's focus on the purpose of Victim's entry does not track the statute or case law applying it. But whether the victim entered the home for the purpose of assaulting someone or committing a felony *is* relevant to the reasonableness of the defendant's fears and beliefs at the time of the victim's entry. *See* Utah Code Ann. § 76-2-405(1)(a)–(b). Nonetheless, whether Karr believed that Victim entered or attempted to enter his home for the purpose of committing a felony, rather than an assault, was not at issue in this case. *See Green v. Louder*, 2001 UT 62, ¶ 17, 29 P.3d 638 (ruling that a trial court errs when giving a jury instruction that is "inconsistent with the evidence presented at trial"). Additionally, Instruction 36 focused only on the reasonableness of Karr's action, when it should have directed the jury to consider Karr's "beliefs *and*

actions." *See State v. Moritzsky*, 771 P.2d 688, 691 (Utah Ct. App. 1989) (emphasis added). For these reasons, we consider Instruction 36 to be technically incorrect.

¶15 Nonetheless, "[o]nly harmful and prejudicial errors constitute grounds for granting a new trial." *See State v. Young*, 853 P.2d 327, 347 (Utah 1993). The errors here are harmless. The State did not rely on the "committing a felony" language, *see State v. DeAlo*, 748 P.2d 194, 198 (Utah Ct. App. 1987) (ruling that the erroneous inclusion of a "superfluous" jury instruction was "harmless"), and we are not convinced that the omission of the words "and beliefs" in Instruction 36 had an effect on the outcome of the trial where the State sought to rebut the presumption by showing that both Karr's beliefs and actions were not reasonable. *See supra* ¶¶ 12–13; *see also Green*, 2001 UT 62, ¶ 17 (explaining that an error in a jury instruction is harmless if "we are not convinced that without this instruction the jury would have reached a different result").

¶16 In sum, although Instruction 36 could have been clearer, we reject Karr's claims of error in the instruction and are not convinced that any errors in the instruction were prejudicial. *See State v. Campos*, 2013 UT App 213, ¶ 64, 309 P.3d 1160 ("[I]f taken as a whole they fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error." (alteration in original) (citation and internal quotation marks omitted)). Accordingly, the trial court did not err when it gave the jury Instruction 36.[7]

---

7. Because we have determined that only one error occurred below—that Instruction 36 erroneously, but harmlessly, contained the "committing a felony" language and omitted the words "and beliefs"—we necessarily reject Karr's cumulative error argument. *See generally State v. Dunn*, 850 P.2d 1201, 1229

(continued…)

CONCLUSION

¶17    Instruction 36 did not undermine Karr's entitlement to the presumption of reasonableness provided by subsection (2) of the defense of habitation statute. Accordingly, the instruction did not prejudice Karr. We affirm Karr's convictions.

───────

VOROS, Judge (concurring):

¶18    I concur in the result. I agree with the majority that, on the facts before the jury, the instructional errors were harmless. I write to urge the legislature to consider clarifying the defense-of-habitation statute and in particular its presumption of reasonableness. *See* Utah Code Ann. § 76-2-405 (LexisNexis 2012).

¶19    Subsection (1) of section 405 defines the defense of habitation. It consists of a single sentence of 157 words. The subsection's proviso specifies when deadly force may be used in defense of one's habitation. Such force may be used in either of two circumstances. *See id.* § 76-2-405(1)(a) & (b).

¶20    The first circumstance occurs when three elements are all present. *See id.* § 76-2-405(1)(a). The first element includes three alternative sub-elements ("the entry is made or attempted in a violent and tumultuous manner, surreptitiously, or by stealth"). *Id.* The second element contains two alternative sub-elements, each of which includes two alternative sub-sub-elements (the defendant reasonably believes that the entry is either "attempted

───────

(…continued)
(Utah 1993) (explaining the cumulative error doctrine). Likewise, we need not address Karr's argument that a reversal and new trial on his murder conviction requires a reversal and new trial on his obstruction of justice conviction.

or made" for either "assaulting or offering personal violence to any person . . . dwelling . . . or being in the habitation"). *Id.* The third element requires only a single showing ("the force is necessary to prevent the assault or offer of personal violence"). *Id.*

¶21 The second circumstance occurs when two elements are both present. *See id.* § 76-2-405(1)(b). The first element includes two alternative sub-elements ("the entry is made or attempted for the purpose of committing a felony in the habitation"). *Id.* The second element requires a single showing (the defendant reasonably believes "that the force is necessary to prevent the commission of the felony").

¶22 The complexity of subsection 405(1) renders the defense of habitation difficult to apply in practice. By my calculation, subsection 405(1)'s one sentence creates 24 possible permutations for establishing the defense of habitation.

¶23 Subsection 405(2)'s presumption of reasonableness further complicates the analysis. *See* Utah Code Ann. § 76-5-405(2) (LexisNexis 2012). That subsection lists five facts that, if established, trigger the rebuttable presumption of two facts: (1) that the actor "acted reasonably" and (2) that the actor "had a reasonable fear of imminent peril of death or serious bodily injury" (the presumed facts). *Id.* The first presumed fact roughly correlates to the elements of the defense of habitation in subsection (1), which requires that the defendant acted while "reasonably believing" certain things. But it does not track the text of the defense of habitation as defined in subsection (1).

¶24 Similarly, the second presumed fact loosely correlates to certain elements of the defense of habitation, such as whether the defendant "reasonably believes" the victim entered for the purpose of "offering personal violence to any person" (whatever that means). But again, it does not track the text of any element

of the defense of habitation and in fact seems aimed at establishing an element of the related—but nevertheless distinct—defense-of-person statute. *See id.* § 76-2-402(1)(b) ("A person is justified in using force intended or likely to cause death or serious bodily injury only if the person reasonably believes that force is necessary to prevent death or serious bodily injury to the person or a third person as a result of another person's imminent use of unlawful force, or to prevent the commission of a forcible felony.").

¶25    In short, subsection 405(1) creates a complex matrix of elements necessary to establish the defense of habitation, and subsection 405(2) creates a presumption that permits certain facts to be presumed. But the presumed facts only approximate, not duplicate, elements of the defense of habitation. For these reasons, I urge the legislature to consider amending this section to the extent it deems appropriate.

¶26    Of course, while legislatures enact statutes, courts apply them in live cases, and we have one before us. Like the majority, I believe the appeal turns on prejudice. Karr explicates well the flaws in Instruction 36—flaws that (I believe) derive from the defense-of-habitation statute's complexity as catalogued above. That said, Instruction 36 instructed the jury that "defendant is entitled to the presumption that his actions were reasonable." It then described how the prosecution could rebut that presumption. That description was, as Karr contends, wrong. I agree with Karr's contention that "to rebut the presumption of reasonableness under § 76-2-405(2), the prosecution must show that it was unreasonable for the defendant to believe that deadly force was necessary."

¶27 For reasons explained in the majority opinion, demonstrated in the State's brief, and apparent on the record, I conclude that the prosecution did show, beyond a reasonable doubt, that Karr could not have reasonably believed that deadly

force was necessary here. Uncontroverted trial testimony established that Victim, after partying for some time, stepped out momentarily then stepped back inside to retrieve some liquor; that Karr quarreled with Victim, who was drunk; that Karr stabbed Victim outside on the porch; that Karr stabbed Victim, who was unarmed, seven times; that Brother restrained Victim during the stabbing; and that Victim did not resist. In contrast, Karr's own version of events, as reported to police, evolved over time. First he said he was not present at the house where the stabbing occurred; then that he acted in defense of Brother; then that Victim attacked him with a knife; and finally that when he saw Victim go for Brother, he "snapped."

¶28 On this record, the instructional errors do not undermine my confidence in the jury's verdict. I accordingly concur in the result.

————————

ROTH, Judge (concurring):

¶29 I concur in the lead opinion. In addition, I join Judge Voros in "urg[ing] the legislature to consider clarifying the defense-of-habitation statute and in particular the presumption of reasonableness." *See supra* ¶ 18. I do so for the reasons he has cogently stated in his concurrence.

————————