*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 22**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

LANCE BESS,
*Appellant.*

No. 20170746
Filed June 3, 2019

On Certification from the Court of Appeals

First District, Box Elder
The Honorable Brandon J. Maynard
No. 151100329

Attorneys:

Sean D. Reyes, Att'y Gen., John T. Neilsen, Asst. Solic. Gen.,
Salt Lake City, for appellee

Paul G. Cassell, Salt Lake City, Lindsay Jarvis, South Jordan,
for appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Lance Bess, a detective with the Unified Police Department, was bird hunting with several family members when another hunter accidentally fired three shots in their direction. When the firing stopped, Bess angrily confronted the hunter's group with his service weapon drawn and held at his side. As a result of this incident, the State charged Bess with one count of threatening with or using a

dangerous weapon in a fight or quarrel (threatening with a dangerous weapon).[1] He was convicted after a trial and timely appeals.

¶2    The relevant criminal statute makes an exception for persons acting in self-defense and peace officers in performance of their duties (performance of duties). The court of appeals certified this case to us to determine whether these exceptions are elements of the offense or affirmative defenses.

¶3    Bess argues that the district court's treatment of these exceptions as affirmative defenses caused a structural error in the trial. He also argues that the court wrongly excluded a declaration from a juror in support of his motion for a new trial and that the court gave the jury an unconstitutionally coercive deadlock instruction.[2]

¶4    We affirm.

## BACKGROUND[3]

¶5    Bess and his family were hunting at public shooting grounds when an inexperienced hunter shot in their direction. Despite the family's attempts to alert the shooter to their presence, the shooter fired twice more. After the shooting stopped, Bess—still holding his shotgun—drew his service weapon and approached the hunting party. He shouted profanities at the group and demanded to know who had shot at his family. Admitting fault, an adult man in the hunting party acknowledged that a young, inexperienced hunter in their group had accidently fired shots in the family's direction.

---

[1] *See* UTAH CODE § 76-10-506(2) (outlining the elements of threatening with or using dangerous weapon in fight or quarrel).

[2] A deadlock instruction, also known as an *Allen* charge, is "[a] supplemental jury instruction given by the court to encourage a deadlocked jury, after prolonged deliberations, to reach a verdict." Allen *Charge*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Allen v. United States*, 164 U.S. 492 (1896).

[3] "On appeal from a jury verdict, we view the evidence and all reasonable inferences in a light most favorable to that verdict and recite the facts accordingly." *State v. Pinder*, 2005 UT 15, ¶ 2, 114 P.3d 551 (citation omitted) (internal quotation marks omitted).

And the young hunter was in tears, upset at his mistake. The man requested that Bess put his service weapon away. When Bess refused, the man suggested that they call the police. In response, Bess said, "[G]o right ahead, I am a fucking cop." The man then asked to see Bess's badge, but Bess denied having it with him. After the man expressed doubts as to Bess's credentials, Bess quickly flashed his badge at them. Bothered by the encounter, the man from the hunting party notified the police.

¶6     The State ultimately charged Bess with one count of threatening with a dangerous weapon, and the case proceeded to trial.

¶7     At the beginning of trial, over Bess's objection, the district court provided the jury with the following instruction:

> Lance Bess is charged with committing [the offense of] threatening with or using a dangerous weapon in a fight or quarrel. You cannot convict him of this offense unless, based on the evidence, you find beyond a reasonable doubt each of the following elements:
>
> No. 1:  That the defendant, Lance Bess;
>
> No. 2:  In the presence of two or more persons;
>
> No. 3:  Intentionally, knowingly or recklessly;
>
> No. 4:  Drew or exhibited a dangerous weapon;
>
> No. 5:  In an angry and threatening manner.

¶8     Bess argued that the jury instruction omitted what he termed "negative elements" of the charged crime, specifically that (1) he did not act in self-defense and (2) he was not a peace officer in performance of his duties. In overruling Bess's objection, the district court concluded that these provisions of Utah Code section 76-10-506 were affirmative defenses, not elements. Accordingly, the district court explained that some evidence supporting the defenses must be presented by either party before it would instruct the jury on them.

¶9     After the defense rested, the district court determined that sufficient evidence had been presented to instruct the jury on both affirmative defenses. Thus, before closing arguments, the court gave its final instructions on the law. In addition to listing the five elements included in the preliminary jury instruction, the replacement instruction provided that the jury could not convict Bess unless it also found beyond a reasonable doubt that he "did not draw or exhibit the weapon in self-defense" and that he "was not a

peace officer . . . acting in the performance of his duties." The final jury instruction was the same instruction that Bess had requested at the beginning of trial.

¶10   During its closing argument, the State noted that it had to prove "essentially seven elements" beyond a reasonable doubt, including disproving the affirmative defenses. The defense also focused their closing arguments on the affirmative defenses.

¶11   After deliberating for approximately three hours, the jurors sent a note to the judge indicating they were deadlocked. Bess moved for a mistrial, but the district court denied the motion and instead read the jury the deadlock instruction from the Model Utah Jury Instructions. The jury deliberated for three more hours and ultimately convicted Bess. When polled, each juror affirmed that his or her verdict was guilty.

¶12   Bess then moved for a new trial, arguing that the district court had erroneously omitted two "negative elements" from the preliminary jury instruction. The motion included a declaration from Bess's trial counsel summarizing several conversations she had had with jurors regarding the difference between the preliminary and final elements instructions. According to Bess's trial counsel, several jurors stated that they were surprised by the change in the jury instructions and said that they could have been listening for evidence supporting those provisions if they had known to do so from the beginning of trial.

¶13   The parties stipulated to a briefing schedule for the motion for a new trial. Bess agreed to submit his reply to the State's response to the motion by 5:00 p.m. on August 11, 2017. However, on the due date, Bess did not file his reply memorandum until shortly after 7:00 p.m. Along with the motion, he attached a juror declaration impeaching the verdict and an accompanying motion to supplement the new trial motion.

¶14   The State moved to strike the juror statements impeaching the verdict, arguing that they violated rule 606 of the Utah Rules of Evidence. At oral argument on these motions, the district court, on its own, excluded both parties' late filings, noting that they had both been "very adamant about deadlines." The court thus decided to strike any untimely materials, including Bess's reply and supplemental materials.

¶15   The district court then denied the motion for a new trial on the merits, reasoning that "[a] plain reading of the statute

demonstrates self-defense and performance-of-duties were included as exemptions, which are defined and construed as affirmative defenses." The court explained that the State was therefore not required to negate the defenses unless and until sufficient evidence was presented to put them at issue. The court observed that Bess had not been prejudiced in any event, because the jury was notified that the instructions were subject to amendment and the final instructions included all of the language Bess had requested. As to the deadlock instruction, the district court noted that it had "simply followed the standard approach."

¶16 Bess timely appealed. The court of appeals certified the case to us to consider whether Utah Code section 76-10-506(4), which provides that "[t]his section does not apply to a [peace officer] in performance of the person's duties," constitutes an element of or an affirmative defense to the charge of threatening with a dangerous weapon. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

## STANDARD OF REVIEW

¶17 We review a district court's denial of a motion for a new trial for an abuse of discretion. *See State v. Martin*, 2002 UT 34, ¶ 45, 44 P.3d 805. But "[w]e review the legal standards applied by the [district] court in denying such a motion for correctness" and "the [district] court's factual findings for clear error." *State v. Maestas*, 2012 UT 46, ¶ 103, 299 P.3d 892 (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶18 Bess raises a number of issues that fall into three categories. First, he contends that the district court erred in concluding that self-defense and performance of duties are affirmative defenses rather than elements of the offense. As a result of the mischaracterization, Bess argues that the preliminary jury instruction misstated the State's burden of proof, causing a structural trial error. Second, Bess contends that the district court abused its discretion in excluding as untimely the juror's declaration impeaching the verdict. Finally, he argues that the deadlock instruction was unconstitutionally coercive under the circumstances presented here.[4]

---

[4] Bess also contends that the cumulative effect of these errors mandates a new trial. "Under the cumulative error doctrine, we

(cont'd.)

¶19   We conclude that under Utah Code section 76-10-506,[5] self-defense and performance of duties are affirmative defenses, not elements of the offense. We also determine that the juror's declaration was inadmissible under rule 606(b) of the Utah Rules of Evidence, so we do not reach whether the court abused its discretion in excluding it due to untimeliness. Finally, we conclude that Bess failed to prove that the district court's deadlock instruction was unconstitutionally coercive under the circumstances here.

¶20   We address each of the errors Bess alleges in turn.

## I. PRELIMINARY JURY INSTRUCTION

¶21   Before the parties gave their opening statements, the district court read preliminary instructions to the jury to orient them to the trial process. As Bess acknowledges, such instructions do not have to address the elements of charged crimes. *See* UTAH R. CRIM. P. 19(a) ("After the jury is sworn and before opening statements, the court *may* instruct the jury concerning . . . the elements and burden of proof for the alleged crime . . . ." (emphasis added)). But here, the court included an instruction outlining the elements of threatening with a dangerous weapon. The instruction explained that the State had to prove beyond a reasonable doubt that: (1) The defendant, Lance Bess; (2) in the presence of two or more persons; (3) intentionally, knowingly or recklessly; (4) drew or exhibited a dangerous weapon; (5) in an angry and threatening manner.

¶22   Bess argues this instruction was incorrect because it excluded two "negative elements" that the State was required to disprove beyond a reasonable doubt: that the defendant was not

---

will reverse [a jury verdict or sentence] only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had." *State v. Maestas*, 2012 UT 46, ¶ 363, 299 P.3d 892 (alterations in original) (citation omitted) (internal quotation marks omitted). Because we conclude that the district court did not err, the cumulative error doctrine does not apply and we decline to grant Bess a new trial on this basis.

[5] Utah Code sections 76-10-506 and -523 were recently amended. Although the amendments are non-substantive, for clarity, we cite to the 2014 version of the Utah Code, which was in effect at the time of the incident in question and was used to draft the jury instructions in this case.

(1) acting in self-defense[6] or (2) a peace officer in performance of his duties.[7] Over Bess's objection, the district court concluded these were affirmative defenses upon which the jury should not be instructed until enough evidence was introduced in support of them to put the defense at issue.

¶23 Bess contends that the plain language and legislative purpose of the relevant statute, *see* UTAH CODE § 76-10-506, show that these are elements of the crime. Alternatively, he argues that if we determine the statute is ambiguous, the rule of lenity[8] dictates that the statute should be construed in his favor.

¶24 We first address Bess's plain language argument. Bess asserts that the text of the statute shows that self-defense and performance of duties are elements because they appear within the statute itself rather than in the sections of the code listing affirmative defenses, *see id.* §§ 76-2-301 to -307, or in their own section as do justification and self-defense, *see id.* §§ 76-2-401 to -402. He also notes that section 506 does not label them as affirmative defenses. None of this means that section 506 plainly designates the absence of self-defense and performance of duties as elements of threatening with a dangerous weapon.

---

[6] Utah Code section 76-10-506(2) references the self-defense statute as an exception to the outlined offense. And section 76-10-506(3) outlines a particular variant of self-defense that is specific to this crime, stating, "This section does not apply to a person who, reasonably believing the action to be necessary in compliance with Section 76-2-402 [(the self-defense statute)], with purpose to prevent another's use of unlawful force: (a) threatens the use of a dangerous weapon; or (b) draws or exhibits a dangerous weapon."

[7] *See* UTAH CODE § 76-10-506(4) ("This section does not apply to a person listed in Subsections 76-10-523(1)(a) through (e) in performance of the person's duties."). Relevant here, section 76-10-523(1)(c) lists "a peace officer of this or any other jurisdiction."

[8] "The rule of lenity requires that we interpret an ambiguous statute in favor of lenity toward the person charged with criminal wrongdoing." *State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258.

¶25 "[O]ur primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve." *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795. "[W]e read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Holm*, 2006 UT 31, ¶ 16, 137 P.3d 726 (citation omitted) (internal quotation marks omitted). We do not look to other interpretive tools unless we conclude that the statute is ambiguous. *See id.* We thus proceed by analyzing the plain language of Utah Code section 76-10-506 in context.

¶26 The statute defining the offense of threatening with a dangerous weapon appears in Chapter 10 of the Utah Criminal Code, which deals with "Offenses Against Public Health, Safety, Welfare, and Morals." The statute is located in Part 5 of this chapter, which contains Utah's criminal weapons laws. Also in Part 5 is a provision listing persons who are, for the most part, exempt from these weapons laws. *See* UTAH CODE § 76-10-523(1)(a)–(f) (2014). The list includes: United States marshals, federal officials who are required to carry a firearm, peace officers, law enforcement officials and judges as defined and qualified under Utah Code section 53-5-711, and common carriers engaged in the regular and ordinary transport of firearms as merchandise. *Id.*

¶27 Although these persons are mostly exempt from Utah's weapons laws, the exemption is not absolute.[9] Three criminal weapons statutes, including the one at issue here, specify that these officials are exempt from the offenses they circumscribe only under certain circumstances—primarily that they are acting in self-defense or in performance of their duties. *See id.* §§ 76-10-506, -508, -508.1. In practice, this means that United States marshals, peace officers, judges, or any of the other officials listed in section 523(1)(a)–(e) are prohibited from: threatening others with or using a dangerous weapon during a fight; discharging a firearm from a vehicle, near a highway, or in the direction of any person; and discharging a firearm in the direction of a building, habitable structure, or vehicle—unless

---

[9] The individuals listed in Utah Code section 76-10-523(1) are not exempt from sections 506, 508, and 508.1 of this part or from section 53-5-7, the Concealed Firearm Act.

they are acting in self-defense or in performance of duties. *See id.* §§ 76-10-506, -508, -508.1, -523.

¶28 Looking to the specific language of section 506 in this context, it states in relevant part:

> (2) Except as otherwise provided in Section 76-2-402 [the self-defense statute] and for those persons described in Section 76-10-503 [who are restricted from possessing dangerous weapons], a person who, in the presence of two or more persons, and not amounting to a violation of Section 76-5-103 [aggravated assault], draws or exhibits a dangerous weapon in an angry and threatening manner or unlawfully uses a dangerous weapon in a fight or quarrel is guilty of a class A misdemeanor.
>
> (3) This section does not apply to a person who, reasonably believing the action to be necessary in compliance with Section 76-2-402 [the self-defense statute], with purpose to prevent another's use of unlawful force:
>
> > (a) threatens the use of a dangerous weapon; or
> >
> > (b) draws or exhibits a dangerous weapon.
>
> (4) This section does not apply to a person listed in Subsections 76-10-523(1)(a) through (e) in performance of the person's duties.

*Id.* § 76-10-506(2)–(4).

¶29 The plain language of the statute shows that self-defense and performance of duties are exemptions from the offense. The statute states that it "does not apply" to a person listed in section 523(1)(a)–(e)—here, a peace officer—in performance of duties. With regard to self-defense, the statute states both that it "does not apply" to individuals who reasonably believe they must act to prevent another's use of unlawful force, *see id.* § 76-10-506(3), and that self-defense is an exception to the outlined offense, *see id.* § 76-10-506(2) (stating that the offense is a class A misdemeanor "[e]xcept as otherwise provided in 76-2-402").

¶30 As we concluded in *State v. Smith*, 2005 UT 57, 122 P.3d 615, exemptions from criminal statutes generally function as affirmative defenses. *Id.* ¶ 19. In *Smith*, we stated that possession of a license or permit was an affirmative defense to carrying a concealed firearm.

*Id.* We said: "Exemptions from laws, particularly when based on possession of a license or permit . . . are typically construed as affirmative defenses, partly because a defendant is in a better position to prove he has a permit than is the State to prove that he lacks such a permit." *Id.*

¶31 Further, the defendant is better positioned to know if any of the many possible exemptions even apply in his case. To construe these provisions as elements would mean that the State would have to disprove every exception to section 506—whether relevant in a given case or not. Under Bess's logic, in addition to the five elements the district court recited, the State would have to prove that Bess is also not (1) a United States marshal, nor (2) a federal official required to carry a firearm, nor (3) a peace officer, nor (4) a law enforcement official as defined and qualified in Utah Code section 53-5-711, nor (5) a judge as defined and qualified in section 53-5-711, and that (6) he was not acting in self-defense. And the State would have to do this in every case in which it charged a violation of sections 506, 508, or 508.1. One of the basic functions of affirmative defenses is to narrow the issues to those that are relevant. *See* Thomas R. Lee, *Pleading and Proof: The Economics of Legal Burdens*, 1997 BYU L. REV. 1, 6.

¶32 Utah Code section 76-1-501 is also instructive. It defines "element of the offense" as "the conduct, attendant circumstances, or results of conduct *proscribed, prohibited, or forbidden* in the definition of the offense" along with "the culpable mental state required." UTAH CODE § 76-1-501(2) (emphasis added). Here, self-defense and performance of duties are not part of the conduct that is "proscribed, prohibited, or forbidden." Rather, in outlining the exceptions to section 506, the legislature provided guidance as to when it does and does not apply. Bess essentially argues that the State must prove as elements not only the conduct that is forbidden, to which the law applies, but also the conduct or circumstances that are not forbidden, to which the law does not apply. That is incorrect.

¶33 Because the plain language of the statute shows that self-defense and performance of duties are exceptions to section 506, we conclude the district court correctly determined that they were affirmative defenses against the charged offense. Self-defense and performance of duties function as affirmative defenses to the offense of threatening with a dangerous weapon.

¶34 Importantly, this does not shift the burden of proof from the State to the defendant. Rather, it means that sufficient evidence

must be presented at trial to put the affirmative defense at issue. *See State v. Campos*, 2013 UT App 213, ¶ 41, 309 P.3d 1160 ("[O]nce a defendant—or even the prosecution for that matter—has produced enough evidence to warrant the giving of an instruction on an affirmative defense, the defendant is entitled to acquittal . . . unless the prosecution carries its burden of disproving the defense beyond a reasonable doubt." (emphasis omitted)). At that point, the State must disprove the defense beyond a reasonable doubt. *See id.* Accordingly, the district court did not err in waiting to instruct the jury on these defenses until the final instructions, after Bess had placed the defenses at issue.

## II. JUROR DECLARATION

¶35 Bess next argues that the district court erred in excluding the juror declaration he submitted with his motion for a new trial. In particular, he argues that the court abused its discretion when it elected not to consider the declaration because it was untimely. Because we ultimately conclude that the district court would be barred from considering the declaration under rule 606(b) of the Utah Rules of Evidence, any error in excluding it due to untimeliness is harmless. We therefore decline to address whether the court abused its discretion in this regard and instead affirm on alternative grounds. *See Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record.").

¶36 Rule 606(b) prohibits, with a couple of exceptions, the admission of a juror declaration pertaining to "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." It prohibits "virtually all inquiries into the jury deliberation process." *State v. King*, 2008 UT 54, ¶ 45, 190 P.3d 1283 (citation omitted) (internal quotation marks omitted). These restrictions help to insulate the jury and protect jurors from being harassed by defeated parties.

¶37 Bess argues that rule 606(b) should not limit the use of the declaration because "Utah Rule of Evidence 606(b) was recently declared unconstitutional as written." In support, Bess refers to the United States Supreme Court's recent decision in *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). But Bess misreads the holding of that case. In *Pena-Rodriguez*, the Supreme Court determined that Colorado's rule 606(b) equivalent was unconstitutionally applied

when it precluded juror testimony regarding racial animus among the jurors. Specifically, the Supreme Court said,

> [W]here a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee.

*Id.* at 869.

¶38 We read *Pena-Rodriguez* to strike down Colorado's rule 606(b) only as applied to statements indicative of racial animus. Beyond this narrow, as-applied holding, *Pena-Rodriguez* contains language supporting the policy behind rule 606(b). According to the Supreme Court, the no-impeachment rule "promotes full and vigorous discussion" and it "gives stability and finality to verdicts." *Id.* at 865. We do not read *Pena-Rodriguez* to strike down Utah's or any other state's 606(b) equivalent as facially unconstitutional.

¶39 Under rule 606(b), the declaration is an impermissible encroachment into the jury's deliberative process. The rule contains two narrow exceptions, one of which Bess claims is relevant here. Jurors are permitted to testify about whether "extraneous prejudicial information was improperly brought to the jury's attention" or "an outside influence was improperly brought to bear on any juror." UTAH R. EVID. 606(b)(2). Bess contends that the contested declaration falls under the extraneous prejudicial information exception. But that is incorrect.

¶40 In particular, Bess argues that the declaration discloses that two items of extraneous prejudicial information were brought to the jury's attention. According to the declaration, one juror, a "deputy," began educating the rest of the jurors about concealed weapons permits. The juror stated that he "wouldn't have handled the situation like Bess handled it." Another juror discussed his own criminal conviction and stated that, in being held accountable, he realized his mistake. The declaration quotes this juror as saying, "I had to be held accountable for my actions, he needs to be held accountable for his." Bess argues that these statements were "extraneous" because the information was not presented at trial.

¶41 But this is not extraneous information within the meaning of rule 606(b). "[E]xtraneous prejudicial information 'cover[s]

12

misconduct such as jurors reading news reports about the case, jurors communicating with third parties, bribes, and jury tampering.'" *State v. Maestas*, 2012 UT 46, ¶ 114, 299 P.3d 892 (second alteration in original) (citation omitted). It also "includes the jury's consideration of evidence not admitted in court, and instances where a juror 'conduct[ed] his own investigation and [brought] the results into the jury room.'" *Id.* (alterations in original) (citations omitted). It is not "evidence of discussions among jurors" or "instances where a juror . . . brings his personal experiences to bear on the matter at hand." *Id.* (alteration in original) (citations omitted) (internal quotation marks omitted). The statements that Bess seeks to admit are best characterized as juror discussions about personal experiences and opinions. The declaration does not contain allegations of extraneous prejudicial information being brought to the jury's attention.

¶42 We conclude that the juror declaration is impermissible under rule 606(b), and no exception applies to it. Accordingly, we affirm the district court's decision not to consider it on this alternative ground.

### III. DEADLOCK INSTRUCTION

¶43 Finally, Bess argues that the deadlock instruction provided to the jury was unconstitutionally coercive. While Bess recognizes that courts must typically speculate as to the coercive effect of a deadlock instruction, he contends that we may avoid doing so here by looking to the juror declaration that he submitted with his motion for a new trial. We conclude that the declaration is inadmissible for this purpose and that Bess has otherwise failed to demonstrate that the deadlock instruction was coercive.

¶44 Utah courts have repeatedly upheld the use of deadlock instructions as a permissible way "to guide the jury to a fair and impartial verdict," so long as the instruction is not coercive. *See State v. Ginter*, 2013 UT App 92, ¶ 6, 300 P.3d 1278 (quoting *State v. Lactod*, 761 P.2d 23, 29–30 (Utah Ct. App. 1988) (internal quotation marks omitted)). In determining the constitutionality of a particular deadlock instruction, we consider (1) whether the language of the instruction is *per se* coercive, and (2) whether it is coercive under the circumstances presented in the case. *See Lactod*, 761 P.2d at 30–31.

¶45 Here, the jurors deliberated for approximately three hours before notifying the court that they were deadlocked five votes to one in favor of conviction. To encourage further deliberation, the court recommended that it provide the jury with a deadlock

instruction patterned after Model Utah Jury Instruction CR218. Bess objected and moved for a mistrial, which the court denied. When the jurors returned, the court asked them "to keep working at this for a time period" and stated that it would provide one final instruction. The instruction read:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous. It is your duty to consult with one another and to deliberate. Your goal should be to reach an agreement . . . if you can do so without surrendering your individual judgment. Each of you must decide the case for yourself, but do so only after impartially considering the evidence with your fellow jurors. Do not hesitate to reexamine your own views and change your position if you are convinced [it] is a mistake. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or just to return a verdict. You are judges, judges of the facts. Your sole interest is to determine the truth from the evidence of the case.

¶46 The jury continued deliberating for three more hours before it issued a unanimous guilty verdict. When polled, each juror confirmed that he or she agreed with the guilty verdict.

¶47 Bess concedes that the language of this deadlock instruction is not *per se* coercive. Instead, he argues that the instruction was coercive in light of the circumstances presented here. Nevertheless, Bess does not engage in any meaningful analysis of the circumstances surrounding the district court's issuance of the instruction. Rather, he asks us to rely on the juror declaration to conclude that the instruction had a coercive effect. We decline to do so.

¶48 As previously stated, under the Utah Rules of Evidence, juror declarations are admissible to dispute the validity of a verdict only where "extraneous prejudicial information was improperly brought to the jury's attention" or where "an outside influence was improperly brought to bear on any juror." UTAH R. EVID. 606(b). Neither exception is applicable to decide whether a deadlock instruction had a coercive effect. *See United States v. Black*, 843 F.2d 1456, 1464 n.7 (D.C. 1988) (providing that a verdict cannot be

impeached by a juror's affidavit stating that "the anti-deadlock instructions were coercive").

¶49   In relying solely on the inadmissible juror declaration to support his contention that the deadlock instruction was unconstitutionally coercive, Bess has failed to meet his burden of persuasion on appeal. *See State v. Nielsen*, 2014 UT 10, ¶¶ 33–44, 326 P.3d 645 (stating that parties who fail to adequately brief their arguments will likely fail to meet their burden of persuasion on appeal). In particular, Bess has not provided reasoned analysis supported by citations to the record to establish which circumstances, if any, demonstrate that providing the deadlock instruction was unconstitutionally coercive here. *See* UTAH R. APP. P. 24(a)(8). We therefore decline to further address this issue.

## CONCLUSION

¶50   We conclude that under Utah Code section 76-10-506, self-defense and acting as a peace officer in performance of duties are both affirmative defenses, not elements of the offense. We also conclude that the juror declaration submitted by Bess was inadmissible under rule 606(b) of the Utah Rules of Evidence. Finally, we determine that Bess failed to prove the district court's deadlock instruction was unconstitutionally coercive under the circumstances presented in this case.

¶51   Accordingly, we affirm.

---